**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JUDITH LUKAS, on behalf of herself, ) <br> and all others similarly situated, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> ADVOCATE HEALTH CARE ) <br> NETWORK AND SUBSIDIARIES, an ) <br> Illinois non-profit corporation, ) <br> ADVOCATE HEALTH CARE ) <br> NETWORK, an Illinois non-profit ) <br> corporation, EHS HOME HEALTH ) <br> CARE SERVICE, INC. d/b/a ) <br> ADVOCATE AT HOME AND ) <br> ADVOCATE HOME HEALTH CARE ) <br> SERVICES, an Illinois non-profit ) <br> corporation, ) <br> ) <br> **Defendants.** ) | No. 14 C 2740 <br><br> Judge Ronald A. Guzmán |

## **MEMORANDUM OPINION ORDER**

Plaintiff asks the Court to conditionally certify this suit as a collective action under the Fair Labor Standards Act ("FLSA"). The FLSA expressly permits one employee to file suit on behalf of others who are similarly situated. *See* 29 U.S.C. § 216(b). But it also requires that each similarly situated employee opt into the suit by filing a written consent with Court. *See id.* Because the names and contact information for similarly situated employees is generally in the hands of defendants, FLSA plaintiffs often cannot, without defendants' cooperation, provide notice to other putative plaintiffs. Accordingly, courts regularly exercise their discretion to supervise the notice process. *See, e.g.*, *Babych v. Psychiatric Solutions, Inc.*, No. 09 C 8000, 2011 WL 5507374, at *2 (N.D. Ill. Nov. 9, 2011); *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008); *Gambo v. Lucent Techs., Inc.*, No, 05 C 3701, 2005 WL 3542485, at *3 (N.D. Ill. Dec. 22, 2005).

In this district, there is a two-step process for determining whether a FLSA suit should be certified as a collective action. At the first step, which occurs at the start of the case and is at issue here, plaintiff is only required "to make a minimal showing that others in the potential class are similarly situated." *Jirak*, 566 F. Supp. 2d at 847 (quotation omitted). In other words, a collective action will be conditionally certified at step one if there are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 848 (quotation omitted).

Plaintiff alleges that defendants wrongly classify Clinicians who provide in-home patient care as exempt from the FLSA. (Compl. ¶¶ 1-3.) Plaintiff seeks to prosecute the FLSA claim on behalf of:

> All individuals who were employed or are currently employed by the Defendants as Clinicians in their Home Health Care Division during the three (3) years prior to the date of the commencement of this action through the date of judgment in this action, and who were paid on a per visit and hourly basis, and who were not paid all overtime compensation due for time worked in excess of forty (40) in given workweeks.

(*Id.* ¶ 27.)

As defined by plaintiff, the term "Clinician" includes three kinds of healthcare providers, registered nurses ("RNs"), occupational therapists and physical therapists, who hold a variety of job titles with defendant. (*See* Pl.'s Mem. Supp. Mot. Conditional Certification, Ex. 5, Lukas Decl. ¶ 2 (RN employed as a nurse clinician II); *id.*, Ex. 6, Epps Decl. ¶ 2 (RN employed as a field staff nurse); *id.*, Ex. 7, Marshall Decl. ¶ 2 (RN employed as a home health staff nurse).) However, plaintiff alleges that they all "provide care to patients in their homes, complete documentation of patient health and visits ("charting"), communicate with patients, physicians and other medical care providers, and participate in various meetings and training at their branch locations, order supplies

and remain 'on call' during designated times." (Compl. ¶ 20.) Moreover, plaintiff alleges and defendants admit that all Clinicians are paid in the same way, "a combination of a visit rate and hourly rate" without any overtime pay. (*Id.* ¶¶ 3-6, 20-28; *see* Pl.'s Mem. Supp. Mot. Conditional Certification, Ex. 3, Fife Dep. at 20-31.)

Under this compensation plan, Clinicians receive a flat fee for each patient visit, the amount of which depends on the presumed length of each visit. (Compl. ¶ 5.) Plaintiff Lukas is paid $42.00 for each routine visit and discharge visit, which are relatively brief, $75.00 for each start of care visit, resumption of care visit, and recertification visit, which are lengthier, and $10.00 for each attempted visit, each telemanagement visit, and every trip she makes to the lab. (Pl.'s Mem. Supp. Mot. Conditional Certification, Ex. 5, Lukas Decl. ¶ 5.) Opt-in plaintiff Epps was paid $30.00-$35.00 for each routine and discharge visit, and $45.00-$50.00 for each start of care, resumption of care, and recertification visit. (*Id.*, Ex. 6, Epps Decl. ¶¶ 1, 4.) Opt-in plaintiff Marshall was paid $30.00-$40.00 for each routine and discharge visit, $60.00 for each start of care visit, and $8.00-10.00 for each attempted visit. (*Id.*, Ex. 7, Marshall Decl. ¶¶ 1, 4.)

Defendants pay Clinicians on an hourly basis for attending staff meetings and training sessions, and for being on call. Lukas is paid $31.00 per hour for meetings and training, and $3 per hour for being on call. (*Id.*, Ex. 5, Lukas Decl. ¶ 6.) Epps was paid hourly for attending meetings and training, though she does not state the rate, and $2 per hour for being on call. (*Id.*, Ex. 6, Epps Decl. ¶ 5.) Marshall was paid $32.00 per hour for meetings and training, and $4.00 per hour for being on call. (*Id.*, Ex. 7, Marshall Decl. ¶ 5.) None of them is or was paid for:

- documenting and charting the observation of patients' health, treatment, medication, education, and status;

3

- synchronizing computer information with centralized servers at least twice per day and performing cache maintenance once per day;

- scheduling patient visits, relief visits, and telemanagement calls, and mapping daily visit routes;

- performing case management duties;

- conducting business via telephone, including, . . . coordinating with patients and the office scheduler to arrange visits, informing patients of new orders, discussing patient care and orders with doctors and other health care providers, following up on lab results, ordering medical equipment and supplies, attempting telemanagement visits when the patient does not answer, rescheduling visits, completing telephone discharges, and giving and receiving reports and other information from schedulers, managers, medical providers, and patients via voicemail;

- performing tasks while "on call," including synchronizing the computer to obtain the patient's chart, reviewing the chart, calling the patient, calling the physician when appropriate, charting the call information and leaving a voicemail report for the primary nurse;

- completing required reports, such as safety event reports and transfer summaries when patients transfer to a hospital or another facility;

- reviewing policies and procedures in the educational resources found on Advocate's website;

- going into the office to pick up supplies, complete paperwork, and discuss work-related matters with staff and managers;

- reviewing emails concerning lab results, supply orders, policies training, online surveys, safety updates, company updates, and other work-related matters.

(*Id.*, Ex. 5, Lukas Decl. ¶ 7; *id.*, Ex. 6, Epps Decl. ¶ 6; *id.*, Ex. 7, Marshall Decl. ¶ 6.)

Though defendants' own witness testified that a common pay plan applies to all Clinicians, (*see id.*, Ex. 3, Fife Dep. at 20-31), they still contend that plaintiff has not made the modest required for conditional certification because she denied the existence of a common plan in her deposition. Plaintiff did no such thing. Rather, she denied that the document defendants claim describes the plan

does so accurately. (*See* Defs.' Mem. Opp'n Mot. Conditional Certification, Ex. 4, Lukas Dep. at 126-34.) Thus, her alleged disavowal of a common plan is not a basis for denying the conditional certification motion.

Alternatively, defendants argue that the evidence plaintiff offers, declarations from three of 234 Clinicians, is too sparse to satisfy even the minimal step one burden. This argument, however, ignores the other evidence of commonality that plaintiff submitted, the testimony of defendants' own witness that a common plan exists. (*See* Pl.'s Mem. Supp. Mot. Conditional Certification, Ex. 3, Fife Dep. at 20-31.) Coupled with this admission, the declarations plaintiff submitted are sufficient to satisfy her burden.

Even if a common plan exists, defendants say conditional certification is inappropriate because the "lawfulness of [their] pay scheme for any putative class member will depend on several individualized inquiries." (*See* Defs.' Mem. Opp'n Mot. Conditional Certification at 12.) However, this objection "[is] premature . . . at the first step of the collective action process." *Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2012 WL 580775, at *4 (N.D. Ill. Feb. 22, 2012). "[C]oncerns regarding a lack of common facts among potential class members and the need for individualized inquiries" should be raised at step two. *Id.*; *see Jirak*, 566 F. Supp. 2d at 848 (stating that courts consider "whether the plaintiffs share similar or disparate employment settings" at step two).

Defendants' last objection is to the proposed class definition, which covers a three-year, rather than a two-year, period. *See* 29 U.S.C. § 255 (setting a two-year limitations period for ordinary FLSA violations and a three-year period for willful violations). Defendants contend that it is improper to use a three-year period because there is no evidence that they willfully violated the

5

statute. *See Sylvester v. Wintrust Fin. Corp.*, No. 12 C 1899, 2013 WL 5433593, at *5 (N.D. Ill. Sept. 30, 2013) ("A FLSA violation is 'willful' if the defendant either knows he is committing or is reckless about whether he is committing a violation.") (citing *EEOC v. Madison Cmty. Unit Sch. Dist. No. 12*, 818 F.2d 577, 585 (7th Cir. 1987)). At this stage, however, a conclusory allegation of wilfulness, as plaintiff makes, is sufficient to warrant a three-year notice. *Id.*; *see Frebes v. Mask Rest., LLC*, No. 13 C 3473, 2014 WL 1848461, at *4 (May 8, 2014) (approving use of a three-year period because "there is not a high bar" for doing so, and plaintiffs' allegation of willfulness was sufficient to vault it).

## Conclusion

For the reasons set forth above, the Court grants plaintiff's motion for conditional certification of collective action [8, 24] and to provide a three-year notice to putative plaintiffs. The Court orders the parties to submit an agreed proposed notice to the Court within ten days of the date of this order. If the parties cannot agree on a notice, each party must, within the same ten-day period, submit to the Court a proposed notice and a brief statement in support that cites to the authority on which the party relied for the form and content of the notice.

SO ORDERED.                                       ENTERED:   September 24, 2014

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**