# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUDITH LUKAS, individually and on behalf of all others similarly situated, </br></br>Plaintiff,</br></br>v.</br></br>ADVOCATE HEALTH CARE NETWORK AND SUBSIDIARIES, ADVOCATE HEALTH CARE NETWORK, and EHS HOME HEALTH CARE SERVICE INC.,</br></br>Defendants. | Case No: 1:14-cv-2740</br></br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiffs' motion to certify a class under Rule 23 [77] is granted. Advocate's motion to decertify the collective action [85] is denied.

## STATEMENT

Judith Lukas ("Lukas") and the 36 other plaintiffs who have opted into this collective action suit (collectively, "Plaintiffs") bring this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*., and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. §§ 105 *et seq*. Plaintiffs seek damages for the alleged failure of Advocate Health Care Network and Subsidiaries, Advocate Health Care Network, and EHS Home Health Care Service, Inc. (collectively, "Advocate") to pay home healthcare clinicians overtime wages for work in excess of 40 hours per week. (Compl., Dkt. # 1.) This matter is before the Court on Plaintiffs' motion for class certification, filed May 5, 2015. (Mot. Certify Class, Dkt. # 77.) Plaintiffs request that this Court enter an Order: (1) certifying Plaintiffs' claims as a class action; (2) appointing Judith Lukas as Class Representative; and (3) appointing Stephan Zouras, LLP as

class counsel. For the reasons that follow, the motion for class certification is granted. Because the Court finds that Plaintiffs' proposed class satisfies the standards of Rule 23, Advocate's motion to decertify the collective action as to Plaintiffs' FLSA claims is denied.

**Background**

Advocate provides home health care services in Illinois by employing "Clinicians" to travel to patients' homes and perform medical tasks. As used by the parties, the term "Clinicians" encompasses employees holding a variety of job titles but who generally fall within four categories: registered nurses, occupational therapists, physical therapists, and speech therapists. All Clinicians perform clinical visits to patients' homes, though the nature of the medical services performed at each visit and the average length of visits vary substantially. Clinicians also vary in terms of the scope of the geographic area they cover with their visits. For each visit, Clinicians are required to complete patient charting and documentation.

Clinicians are compensated based on rate sheets, which apply to all Clinicians of a given job title and are created and administered by Advocate's corporate office. These rate sheets set out flat fees payable for various types of visits, and accordingly Clinicians are paid mostly on a per-visit rather than a salaried or hourly basis. Activities incidental to a visit – such as planning and scheduling visits, travelling between visits, and patient charting – are included in the visit fee and not separately compensated, and as such Advocate encourages Clinicians to perform their charting for a given patient during the visit. Full-time nurses are expected to perform at least 28 visits per week, while the other types of Clinicians are expected to perform 25 visits. When Clinicians perform a visit, they are required to enter it into a patient billing and recordkeeping software called Allscripts. Clinicians have some autonomy in setting their own work schedules,

and the amount of time spent working can vary both between Clinicians and week-to-week for a single Clinician.

In addition to the per-visit fees, the rate sheets also provide that Clinicians receive hourly pay for administrative tasks such as attending committee meetings, team meetings, in-services, and case conferences. Not all Clinicians serve on committees, but other meeting types are part of a Clinician's job responsibilities. Clinicians do, however, have discretion to skip such mandatory meetings if they need to stay in the field on a visit. Hourly pay is also available for tasks such as resolving technical problems, travelling to unusually distant visits, covering for supervisors, and working on temporary "light duty," as well as for paid time off, disability leave, and completing orientation when a Clinician is initially hired. The proportion of an individual Clinician's total compensation that comes from hourly pay rather than per-visit fees varies widely, with some Clinicians reporting very little hourly pay and others paid solely on an hourly basis for significant periods of time.

Advocate classifies all full-time (and Part Time A, or 80% caseload) Clinicians as exempt from FLSA/IMWL purposes, a decision made at the corporate level that applies to all offices. Because Clinicians are classified as exempt, Advocate does not maintain a timekeeping system and does not monitor the number of hours Clinicians work in order to meet their productivity expectations. Clinicians self-report time spent on tasks for which they are paid hourly (such as meetings or training sessions) using Allscripts, but are only encouraged – not required – to report time spent on administrative work included in the per-visit fee, such as charting and travel. Several Clinicians testified that because they were not paid for such tasks, they documented this time in Allscripts inconsistently or not at all.

Plaintiffs brought this suit on April 16, 2014, seeking damages in the amount of unpaid overtime wages under the FLSA and IMWL. In essence, Plaintiffs' claim is that Clinicians were subject to a pay scheme that combined per-visit rates with hourly rates, and that this hybrid pay scheme does not satisfy the requirements for designating an employee as exempt from overtime pay under the FLSA and IMWL.[1] On this basis, Plaintiffs allege that Clinicians – who Advocate uniformly designated as exempt employees – should in fact have been designated as non-exempt and paid overtime for work they performed in excess of 40 hours per week.

Plaintiffs now seek to certify a statewide class consisting of:

> All individuals employed by [Advocate] as Clinicians in their home health care division during the period April 16, 2011 to the date of judgment in this action, who were paid on a per visit and hourly basis and who were not paid all overtime compensation due for time worked in excess of forty (40) [hours] in given workweeks.

(Mot. Certify Class, Dkt. # 77, at 8.)

## **Legal Standard**

To qualify for certification, a proposed class must satisfy all the requirements of Federal Rule of Civil Procedure 23(a) and must also satisfy one of the three alternative requirements in Rule 23(b). *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). "As a threshold matter, a proposed class must always meet the Rule 23(a) requirements of numerosity, typicality, commonality, and adequacy of representation." *Id.* After the four Rule 23(a) requirements are satisfied, proponents of the class seeking certification under Rule 23(b)(3)

---

[1] The exemption analysis is identical under the two laws. The Illinois legislature has not defined when an employee may be lawfully classified as exempt under the IMWL, but has rather "chosen to defer to decisions by Congress and the United States Department of Labor" regarding overtime exemption standards. *Resurrection Home Health Servs. v. Shannon*, 983 N.E.2d 1079, 1086 (Ill. App. Ct. 2013); *see also Kennedy v. Commonwealth Edison Co.*, 410 F.3d 365, 376 (7th Cir. 2005) (holding that where a plaintiff's FLSA claims fail, "their related state law claims under the IMWL must fail as well"). Accordingly, a pay scheme that renders an employee not eligible for "exempt" status under the FLSA also renders that employee ineligible for exemption from the IMWL's overtime provisions.

– the provision on which Plaintiffs rely here – must also show that: (1) questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) a class action is superior to other available methods of resolving the dispute. *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).

Plaintiffs bear the burden of proving that they are entitled to class certification. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006). The Court does not presume the truth of all well-pleaded allegations in the complaint for purposes of class certification proceedings, and instead "should make whatever factual and legal inquiries are necessary under Rule 23." *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676-77 (7th Cir. 2001). Accordingly, a plaintiff seeking certification must not only allege but "affirmatively demonstrate his compliance with [Rule 23] – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores v. Dukes*, 131 S.Ct. 2541, 2551 (2011) (emphasis in original). Such proof need not be "to a degree of absolute certainty," but instead must establish each requirement by a preponderance of the evidence. *Messner*, 669 F.3d at 811. Nonetheless, a district court "should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Id*. The Court enjoys broad discretion in determining whether certification is appropriate in a given case. *See Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998).

## **Discussion**

Rule 23(a) Factors

*Numerosity*

The first requirement under Rule 23(a) is that the proposed class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Although there is no "threshold or magic number at which joinder is impracticable, a class of more than 40 members is generally believed to be sufficiently numerous for Rule 23 purposes." *Ringswald v. Cnty. of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000) (collecting cases). Bare speculation as to the number of members in a class generally does not suffice, *Valentino v. Howlett*, 528 F.2d 975, 978 (7th Cir. 1976), but a precise number is not required as long as "a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog & Cat Food Co., Inc.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009). That a proposed class may ultimately turn out to include individuals not actually harmed by a defendant's conduct does not defeat certification. *See Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009) (noting that "a class will often include persons who have not been injured by the defendant's conduct….Such a possibility or indeed inevitability does not preclude certification.").

The class list Advocate has provided shows that at least 286 Clinicians were employed by Advocate in Illinois during the relevant time period – a number easily sufficient to make joinder impracticable. Advocate does not directly dispute that a class of 286 meets the numerosity requirement, but argues that the members of the proposed class are not sufficiently "ascertainable" because Advocate has no uniform policy regarding hourly pay. (Opp'n Mot. Certify Class, Dkt. # 92, at 22-23.) Ascertainability – while not an explicitly enumerated factor under Rule 23 – has been recognized as an implicit requirement for certification, as "a class must be sufficiently definite that its members are ascertainable." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012); *see also Simer v. Rios*, 661 F.2d 655, 669 (7th Cir. 1981) ("It is axiomatic that for a class action to be certified a 'class' must exist.").

Advocate's argument is unavailing, however, because the record is clear that a uniform pay scheme does exist. Advocate's rate sheets delineate both the fee-based and hourly rates of compensation for each class of Clinician, and Advocate admits that this combination of per-visit and hourly pay applies to all Clinicians. (*See* Pls.' Ex. C, Warszalek Dep., Dkt. #77-3 at 21.) Moreover, the Memorandum of Understanding that sets out the terms of employment for each class of Clinician states explicitly that visits themselves are fee-based but various administrative tasks are paid at an hourly rate. (*See, e.g.*, Pls.' Ex. J, Dkt. # 84) (explaining that speech therapists are paid a base rate per visit and that "[a]n hourly rate will be paid for the following: staff meetings, in agency in-services, case conferences, orientation, paid time off (PTO), and disability.") Advocate's suggestion that the Court cannot readily determine whether each purported class member actually *received* both fee-based and hourly pay is a red herring; Advocate's payroll records illustrate that of the nearly 286 Clinicians in the class list, only four never received hourly pay. (*See* Def.'s Ex. X, Dkt. # 92-24, at Ex. 5.) Even if these four employees are omitted as not properly part of the class, 282 Clinicians remain who undoubtedly received hourly pay for some tasks and fee-based pay for others. Those 282 class members have already been ascertained, and are sufficiently numerous to satisfy Rule 23.

*Typicality*

Rule 23(a) also requires that claims of the class representative be sufficiently typical of the claims of the class – that is, that they arise from the same practice or course of conduct and are based on the same legal theory. *See Keele*, 149 F.3d at 595. This requirement exists to ensure that the claims of the class representative have the "same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993).

7

"Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996).

Here, Lukas' claims are clearly typical of the claims of other class members. The practice or course of conduct Plaintiffs complain of is Advocate's policy of classifying Clinicians as exempt yet paying them with a combination of fee-based and hourly rates. As noted above, this pay scheme applies to all Clinicians. Plaintiffs' legal theory – that this pay scheme renders Clinicians non-exempt under the FLSA and that they should therefore be entitled to overtime pay – applies to the claims of Lukas and other class members in identical fashion. Advocate argues that Lukas is not typical of the class by pointing to a variety of allegedly unique features of Lukas' work and compensation, such as the large geographic area her visits covered, her high patient load, and the fact that she periodically went on light duty. None of these features make her claims unlike those of the other class members. The fact that Advocate pays Clinicians hourly for essentially all job-related tasks not captured in the visit fees means that individual Clinicians will necessarily receive hourly pay for a variety of different reasons. That few other Clinicians received hourly pay for travel time or light duty – as Lukas did – does not alter the fact that all Clinicians received hourly pay for some subset of their work tasks. Listing trivial differences between the facts underlying a named plaintiff's claims and those underlying the claims of other class members does not render the named plaintiff atypical for purposes of Rule 23. *See Moreno v. Napolitano*, No. 11 C 5452, 2014 WL 4911938, at *9 (N.D. Ill. Sept. 30, 2014) ("[S]imilarity of legal theory may control even in the face of differences of fact") (internal quotations omitted). Lukas complains of the same allegedly unlawful exemption policy and the same resulting loss of overtime pay as the other class members, and accordingly satisfies the typicality requirement.

*Adequacy of representation*

Rule 23(a)(4) requires a plaintiff to show that "the representative parties will fairly and adequately protect the interests of the class." The adequacy criterion requires that the claims and interests of the named plaintiff not conflict with those of the class, that the class representatives have sufficient interest in the outcome of the case, and that class counsel are experienced and competent. *See Retired Chicago Police Ass'n*, 7 F.3d at 598. There is no evidence in the record that Lukas' claims in any way conflict with those of other class members, that she has insufficient interest in the outcome of the case, or that her attorneys are not qualified to litigate these claims. Advocate argues that Lukas is not adequate based solely on the alleged differences between Lukas and other class members discussed above, but none of the immaterial distinctions Advocate notes relate to her ability or incentive to litigate this case on behalf of the class members.

Lukas has participated actively in the case, her attorneys have experience litigating wage and hour class actions, and there is no indication that her interests are antagonistic to those of the other class members. Accordingly, Lukas meets the adequacy requirement to act as class representative.

*Commonality*

Rule 23(a) also requires that there exist questions of law or fact common to the class. This requirement may be satisfied by showing even *one* significant issue common to all class members. *See Dukes*, 131 S.Ct. at 2556 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do") (internal punctuation omitted). Accordingly, for certification

under Rule 23 to be proper there must be common issue that, when decided on the merits, "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 2551.

There can be little doubt that a common issue is present in this case – namely, the question of whether a mixed per-visit and per-hour pay arrangement allows Advocate to lawfully classify Clinicians as exempt under the FLSA. Advocate made a decision at the corporate level to uniformly classify all Clinicians as exempt, declining to compensate them with overtime pay for any hours worked in excess of 40 per week. All Clinicians were subject to similar pay schemes in which the majority of their activities were captured in a per-visit fee-based compensation schedule yet various other tasks were paid at an hourly rate. Given that all Clinicians share essentially the same compensation scheme and were all classified as exempt, the question of whether that their exemption is legal constitutes a common issue. Other courts in this district have recognized that where employees claim they were wrongfully classified as exempt from overtime pay, the legality *vel non* of an employer's exemption policy constitutes a common question sufficient to justify class certification. *See, e.g.*, *Wilkins v. Just Energy Grp., Inc*., No. 13 C 5806, 2015 WL 1234738, at *11 (N.D. Ill. Mar. 13, 2015) (finding commonality requirement satisfied where employer "uniformly treated its door-to-door workers as outside the scope of the IMWL" and therefore did not pay them overtime); *Kurgan v. Chiro One Wellness Centers LLC*, No. 10 C 1899, 2014 WL 642092, at *4 (N.D. Ill. Feb. 19, 2014) (finding commonality satisfied where employer's "failure to pay overtime and track hours of work resulted from a uniform, official, corporate policy of treating [employees] as exempt….The legality of this uniform policy is the focus of this litigation.").

Advocate argues in effect that its uniform exemption policy cannot form the basis for certification because the policy is not unlawful, because the tasks for which each Clinician

received hourly pay were unique or individualized, and because the Court will have to undertake an unwieldy week-by-week analysis to determine in which weeks each class member worked over 40 hours. Whether or not the hybrid pay scheme at issue here is ultimately lawful under the FLSA and IMWL goes wholly the merits however; indeed, it is the ultimate question on the merits, as noted above. Advocate cannot defeat certification simply by arguing that it will win on the primary legal question at issue in this case, as the parties have not fully briefed and argued this legal dispute. As noted above, the fact that different Clinicians received hourly pay for different tasks is irrelevant, given that the combined per-hour and per-visit pay scheme itself is what Plaintiffs attack; it does not matter which particular tasks were paid hourly to different Clinicians, as long as each class member received hourly pay for some work activities and per-visit pay for others. Finally, the differences among class members regarding when and how much hourly pay they received and how much overtime they worked go to damages. Such individualized determinations are relevant in determining whether common issues predominate, but do not alter the fact that a common legal argument forms the basis for all class members' claims. Accordingly, whether or not Advocate's policy of classifying Clinicians as exempt was lawful under the FLSA is a sufficient common issue to meet Rule 23(a)'s commonality requirement.

Rule 23(b)(3)

In addition to satisfying Rule 23(a)'s four requirements, a proposed class action seeking certification under Rule 23(b)(3) must show that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating

the controversy." Fed. R. Civ. P. 23(b)(3). This requirement goes to the efficiency of a class action as an alternative to individual suits, and tests whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The predominance requirement is met if a plaintiff can show that "common questions represent a significant aspect of [a] case and…can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (quoting 7AA Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1778 (3d ed. 2011)).

As noted above, the common issue of whether Advocate's exemption policy for Clinicians is legal is critically important in resolving this litigation. Whether a hybrid pay system renders an employee ineligible for exemption from the FLSA overtime provisions is therefore not only a common issue underlying the claims of all class members, but in many ways a dispositive one. If the FLSA permits employees under a hybrid system to be classified as exempt, then no FLSA or IMWL violation has occurred and no class member is entitled to damages; the case is over. If, on the other hand, the exemption policy violated the FLSA, then all Clinicians were wrongfully classified as exempt and any who worked over 40 hours in a given week are entitled to damages in the amount of their unpaid overtime. Resolution of this common question – which is identical for all class members – will entirely settle the question of liability, leaving damages as the only remaining issue.

Advocate argues that because many Clinicians did not receive hourly pay *every* week, and because many Clinicians did not work over 40 hours *every* week, individualized issues will swamp common ones as the Court will be forced to do a week-by-week analysis of each class member's claims. Advocate is certainly correct that determining the damages owed to each individual class member will be complex, not least because many class members testified that

they did not accurately record their work time in Allscripts. Without accurate timekeeping, it may prove difficult to determine how much overtime each class member actually worked. These individualized issues, however, go only to damages rather than liability – and individualized damages determinations do not defeat predominance for class certification purposes. *See Messner*, 669 F.3d at 815 ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)"); *Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008) (holding that the "need for individual damages determinations does not, in and of itself, require denial of [plaintiff's] motion for certification."); *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) (noting that "numerous courts have recognized that the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate"), *aff'd*, 545 U.S. 546 (2005). While some individualized determination of damages will be necessary, the record strongly suggests that most class members will in fact have at least some damages based on unpaid overtime; Lukas and all 36 remaining opt-in plaintiffs testified that they frequently worked over 40 hours per week.

Here, Plaintiffs' theory is that Advocate unlawfully classified Clinicians as exempt and therefore withheld overtime pay to which they would otherwise be entitled. Accordingly, "there is no possibility in this case that damages could be attributed to acts of the defendants that are not challenged on a class-wide basis." *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) *cert. denied*, 134 S. Ct. 1277, 188 L. Ed. 2d 298 (2014). That litigating damages may be arduous does not alter the fact that the central question in this case regarding Advocate's exemption practices can be decided for all Clinicians in one fell swoop. Moreover, if Advocate is found to have violated the FLSA by wrongfully classifying Clinicians as non-exempt, Advocate

will likely also have violated provisions of the FLSA and IMWL requiring accurate recordkeeping of non-exempt employees' work hours. *See* 29 U.S.C.A. § 211(c); 820 Ill. Comp. Stat. § 105/8. Where this recordkeeping provision is violated, employees enjoy a relaxed standard of proof in establishing damages. *See Driver v. AppleIllinois, LLC*, No. 06 C 6149, 2012 WL 689169, at *3 (N.D. Ill. Mar. 2, 2012) (permitting relaxed standard of proof for damages, because "[a]lthough the employees bear the initial burden of showing that they worked hours for which they were not properly paid, it is the employer's duty to keep proper records"). If the damages stage is reached, therefore, class members will face a lower burden of proving damages and there is no reason to believe that the damages stage of this litigation will be unmanageable compared to other wage and hour class actions.

Advocate emphasizes that class members varied widely in their estimates of how much overtime they worked, as well as in what proportion of their time they actually recorded in the Allscripts program. While many class members have admitted that they did not record all their work time in Allscripts because they knew they would not be paid for it, this does not defeat class certification at this stage. In fact, analysis of the Allscripts records revealed roughly 4,500 workweeks in which even Allscripts – which in many instances will underreport the time actually worked by Clinicians – reflected that a Clinician worked over 40 hours per week. Accordingly, even if no class members is able to establish proof of damages in any other way, the class members who worked those 4,500 weeks would still be entitled to damages. The Allscripts records thus provide a minimum baseline measure of damages that will be quickly and easily ascertainable for each class member in the system, if other methods of showing damages prove unworkable.

Accordingly, the common issue of whether Clinicians were wrongfully classified as exempt predominates over individualized damages determinations. Although the damages questions for members of the class may vary, the liability determination is best adjudicated once, in the class form. A class action is therefore superior to individual trials for each class member, in which the uniform legal issue of the hybrid pay scheme's compliance with the FLSA and IMWL would be wastefully relitigated. The requirements of Rule 23(b)(3) are met, and class certification is proper. Plaintiffs' motion for class certification is therefore granted.

Because Plaintiffs' proposed class meets the Rule 23 standards for class certification, it necessarily meets the much lower bar for FLSA collective action certification. Therefore, Advocate's motion to decertify the collective action is denied.

**Conclusion**

For the reasons above, Plaintiffs' motion to certify a class under Rule 23 [77] is granted. Advocate's motion to decertify the collective action [85] is denied.

**Date**: August 19, 2015

                                    **Ronald A. Guzmán**
                                    **United States District Judge**